602 So.2d 170 (1992)
James PIERCE, Plaintiff-Appellee,
v.
CITY OF ABBEVILLE, Defendant-Appellant.
No. 91-284.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
Preis, Kraft & Daigle, Douglas Gatz, Lafayette, for City of Abbeville/appellant.
*171 Perrin, Landry de Launay & Durand, Warren Perrin, Lafayette, for Pierce/appellee.
Christopher Philipp, Lafayette, for State/appellee.
Before GUIDRY and YELVERTON, JJ., and COREIL[*], J. Pro Tem.
JOSEPH E. COREIL, Judge Pro Tem.
This is a worker's compensation case. This appeal arises from a judgment in favor of an employee, James Pierce, plaintiff-appellee, and against his employer, the City of Abbeville, defendant-appellant, wherein the trial court granted plaintiff vocational rehabilitation, attorney's fees of $1500 on back benefits of $3,521.21, $37.96 reimbursement of a hotel bill incidental to a doctor's visit, and a total temporary benefit payment of $398.94 for one period which had not been paid. Additionally, the trial court reinstated plaintiff's total temporary benefits beginning February 27, 1989, to be continued through his vocational rehabilitation.
Pierce's employer, the City of Abbeville, appealed, contending that the trial court erred in ordering rehabilitation and in reinstating plaintiff's total temporary benefits, to be continued through rehabilitation.
Additionally, Abbeville contends that the trial court erred in awarding $1500 attorney's fees on back benefits of $3,521.21, in awarding $37.96 for a hotel bill without written proof, and in awarding total temporary benefits of $398.94 for a missed total temporary benefit payment.
Pierce answered the appeal, contending that the trial court erred in failing to award penalties on back benefits of $3,521.21, in failing to award penalties and attorney's fees on the reinstatement of total temporary benefits owed from February 27, 1989, and failing to assess penalties on the missed payment of $398.94 total temporary benefits and the hotel bill of $37.96. Finally, by his answer to appeal, Pierce contends that the trial court erred in failing to award him reasonable attorney's fees for those sums sought in the lower court and for attorney's fees for this appeal.
We affirm the judgment of the trial court, as amended.

FACTS
On October 12, 1986, Pierce, while employed as a dispatcher for the City of Abbeville, fell from a rolling chair and struck his knee, sustaining injury to his back, neck, knee, and shoulders. He was subsequently treated by Dr. Cobb, who ultimately performed surgery on Pierce's neck on February 25, 1988.
The City of Abbeville paid Pierce wages in lieu of compensation benefits for approximately one year, at which time he was paid $368.24 temporary total benefits every two weeks on the basis of an average weekly wage of $299.20.
Pierce's neck fusion was successful although Dr. Cobb noted some slight instability in March of 1989. To date, Pierce continues to complain of pain. In September of 1988, Dr. Cobb, Pierce's treating physician, discharged Pierce and allowed him to return to light/medium duty work. Between November of 1988 and January of 1989, Pierce enrolled in a vocational rehabilitation program wherein potential jobs were located for him based on his physical capacity. After the completion of the vocational rehabilitation program, on February 27, 1989, Pierce began to receive reduced compensation in the form of supplemental earnings benefits. This reduction was due to Dr. Cobb's release of Pierce to light duty work and the City of Abbeville's belief that suitable jobs were available within Pierce's physical capacity.
Following his anterior cervical fusion performed in February of 1988, Pierce continued to experience pain in his neck, low back, shoulder, and jaw area. After several phone calls to Dr. Cobb between September of 1988 and March of 1989, Dr. Cobb referred Pierce to Dr. Norman Anseman, a specialist in physical medicine and rehabilitation. Dr. Anseman treated Pierce from *172 July of 1989 until October of 1989. Anseman's deposition reveals that he felt that Pierce should have both his temporomandibular joint (TMJ) and his lower back evaluated. He conducted several tests, including an MRI, EMG, and nerve conduction studies. On October 16, 1989, he stated that Pierce was ready to return to light duty work.
Meanwhile, on or about May 19, 1989, Pierce filed a petition against the City of Abbeville praying for full compensation benefits, certain medical expenses, and the commencement of further vocational rehabilitation services. At the time of trial on October 30, 1990, Pierce had not returned to gainful employment but was self-employed, running a seafood market with volunteer help.

DISCUSSION
Abbeville contends that the trial court erred in reinstating the payments of temporary total benefits to Pierce dating back to February 27, 1989, to continue through rehabilitation. Abbeville contends that Pierce, after February 27, 1989, was capable of returning to full employment earning substantially the same wages that he earned prior to the date of his accident on October 12, 1986. Alternatively, Abbeville argues that it was warranted in reducing Pierce's benefits in February of 1989 to supplemental earnings benefits rather than temporary total benefits insofar as Pierce has the ability to earn some wages, even if not the same wages that he earned at the time of his injury.

REHABILITATION
La.R.S. 23:1226, in effect at the time of Pierce's injury, sets forth the goals of rehabilitation services in Section A & B, as follows:
"A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
B. For the purposes of this Section only, `suitable gainful employment' means employment or self-employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of the injury."
The essence of Abbeville's rehabilitation efforts consisted of helping Pierce locate a job.[1] Specifically, six positions were approved by Dr. Cobb as jobs which the plaintiff could physically attempt. This list of six potential employers was given to Pierce. Several of these were investigated by Pierce without success; others were not looked into by plaintiff because he did not feel he could do the work or make enough money.
Defendant alleges this action, i.e., giving Pierce a list of potential employers, satisfied its requirement to aid plaintiff with vocational rehabilitation under La.R.S. 23:1226. The trial court found that all of the jobs located for Pierce while he was enrolled in the vocational rehabilitation program were jobs in a wage category lower than his earnings prior to the accident. These job descriptions were entered into evidence in connection with Dr. Cobb's deposition. They were mainly minimum wage positions while two positions had monthly salaries which averaged approximately $5.00 per hour. Prior to his injury, Pierce *173 was making approximately $7.00 per hour, or $15,000 per year.
The trial court correctly found that "[t]hese minimal efforts at vocational rehabilitation certainly fall short of the fundamental requirements." Defendant's limited vocational rehabilitation merely identified minimum wage jobs with light to medium work requirements while the statute entitles the employee to "appropriate training and education for suitable gainful employment." La.R.S. 23:1226 A. Suitable employment must be reasonably attainable and offer an opportunity to restore plaintiff as nearly as possible to his average pre-injury earnings. See La.R.S. 23:1226 B. Pierce was offered no such education or training. Since Pierce's injuries precluded him from earning wages equal to the wages he earned prior to his injury, he is entitled to rehabilitation. As such, we find the trial court was correct in awarding vocational rehabilitation. See Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2 Cir.1989), writ denied, 559 So.2d 124 (La. 1990).

TOTAL TEMPORARY BENEFITS/ATTORNEY'S FEES
The trial court correctly found that Pierce was not ready to return to work in September of 1988, pursuant to the testimony of both Dr. Cobb and Dr. Anseman and Pierce himself. Therefore, we find no error on the part of the trial court in reinstating Pierce's total temporary benefits beginning February 27, 1989, the point at which he should have received vocational rehabilitation education or training.
In conjunction with being entitled to further rehabilitation, the trial court found that Pierce had carried his burden of proving that he was entitled to temporary total disability benefits insofar as he is physically unable to work in an unsheltered setting without experiencing substantial pain. Essentially, Pierce has provided himself with sheltered employment by investing in a seafood market. Although not profitable at the time of trial, this self-employment provides Pierce with a potential income during the interim period prior to his rehabilitation and complete recovery.
Pursuant to La.R.S. 23:1226 G, Pierce is entitled to temporary total benefits during any period in which he is receiving training or education under a rehabilitation program. See Willingham v. Employers Ins. of Wausau, 560 So.2d 481 (La.App. 1 Cir. 1990). Additionally, pursuant to La.R.S. 23:1226 G:
"The permanency of the employee's total disability under R.S. 23:1221(2) cannot be established, determined, or adjudicated while the employee is employed pursuant to a rehabilitation program as provided in Subsection (E) of this Section."
As such, we find that, under the worker's compensation law in effect at the time of his injury, he is entitled to temporary total disability benefits beginning February 27, 1989, until he has undergone rehabilitation.[2] See Williams v. Union Tank Car Co., 524 So.2d 858 (La.App. 3 Cir.1988); Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1 Cir.1988), writ denied, 530 So.2d 88 (La.1988); Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La. App. 3 Cir.1986), writ denied, 497 So.2d 312 (La.1986); Durbin v. State Farm Fire and Cas. Co., 558 So.2d 1257 (La.App. 1 Cir. 1990).
Finally, Abbeville contends that the trial court erred in awarding $1,500 attorney's fees on back benefits of $3,521.21, in awarding $37.96 for a hotel bill without written proof, and in awarding total temporary benefits of $398.94 for one missed total temporary benefit payment. After the accident, Abbeville began paying Pierce weekly compensation benefits in the amount of $368.24 every two weeks based on an average weekly wage of $299.20. However, between January of 1987 and July of 1989, defendant underpaid the plaintiff, thereby requiring retention of counsel in order to get reimbursed a lump sum of $3,521.21. We find no error in the trial court's awarding Pierce attorney's *174 fees on the collection of this amount. See La.R.S. 23:1201.2.
As to the hotel bill for $37.96, plaintiff testified as to the amount and the defendant disputed neither the amount nor the necessity for Pierce to stay in a hotel in order to keep his doctor's appointment in Baton Rouge. Finally, as to the $398.94 total temporary benefit payment, again, we find no error on the part of the trial court insofar as plaintiff testified as to this missed payment and defendant offered no contrary evidence or cancelled check. We find no error in the awards of $37.96 and $398.94.

ANSWER TO APPEAL
In answer to the appeal, Pierce contends that the trial court erred in failing to award penalties on the back benefits of $3,521.21 and in failing to award penalties and attorney's fees on all other sums awarded in the trial court judgment. Additionally, Pierce prays for attorney's fees for this appeal.
We agree that, under the mandate of La.R.S. 23:1201, penalties should be awarded on the $3,521.21 of back benefits paid by defendant to plaintiff prior to trial and on the award of temporary total benefits of $398.94 for the period of November 28, 1988.
Insofar as Pierce was awarded $1,500 attorney's fees for the collection of back benefits, we find that this amount is sufficient to cover attorney's fees for the other miscellaneous amounts found payable, i.e., the single payment of $398.94 and the hotel bill of $37.96, prayed for in the same petition.
No penalties or attorney's fees will be awarded for the reinstatement of total temporary benefits beginning February 27, 1989, through the time of rehabilitation. We find that defendant's reduction of Pierce's total temporary benefits to supplemental earnings benefits was neither arbitrary nor capricious nor without probable cause. Under the facts presented, the defendant had a reasonable right to controvert plaintiff's right to continued total temporary benefits.
Dr. Cobb, plaintiff's treating physician, had approved certain jobs for plaintiff in September of 1988, when plaintiff was released as a patient. Pierce's total temporary benefits were not reduced until February 27, 1989, after Pierce had completed the defendant's rehabilitation program, insufficient as it was. Shortly thereafter, plaintiff called and eventually returned to Dr. Cobb in March of 1989, requesting to be referred to Dr. Anseman, whom he saw from July of 1989, through October of 1989.
It is understandable that the defendant believed that the plaintiff was released to return to work when the physician released him and signed authorizations for six positions as being suited for Pierce. Dr. Cobb testified that he signed no release stating that Pierce was released to a specific job being offered. Dr. Cobb further testified that he was merely authorizing certain positions for the plaintiff to try if he felt he was able. Under these circumstances, we find that the trial court correctly denied attorney's fees and penalties for defendant's reduction of plaintiff's total temporary benefits to supplemental earnings benefits. However, we conclude that plaintiff is entitled to an award of attorney's fees in connection with the services performed by his attorney on this appeal.

CONCLUSION
The judgment of the trial court is affirmed and amended in favor of James Pierce, plaintiff-appellee, and against the City of Abbeville, defendant-appellant, as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that attorney's fees in the amount of $1,500 and statutory penalties be paid on the back benefits of $3,521.21;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that reimbursement of $37.96 be paid for the hotel bill incurred in connection with the IME in Baton Rouge;
*175 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that payment of temporary total benefits of $398.94, plus statutory penalties be paid for the period of November 28, 1988;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be payment of temporary total benefits from February 27, 1989, to be continued during the rehabilitation, subject to a credit in favor of the City of Abbeville for those benefits previously paid James Pierce;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, James Pierce, is awarded the sum of $1,000 in compensation for the services of his attorney on appeal; and,
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, City of Abbeville, pay for all costs of these proceedings, on appeal and at trial.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[*] JUDGE JOSEPH E. COREIL, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Pierce could not return to his prior position as a dispatcher for the City of Abbeville insofar as he was terminated after receiving one year of sick leave.
[2] If he has engaged in gainful employment at less than 90% of his pre-injury wages during the period of his temporary total disability, he is entitled to supplemental earnings benefits.